**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-1414**

───────────────

THE WALL GUY, INC.; JEFFREY FRYE; JR CONTRACTORS,

        Plaintiffs – Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for The First State Bank,

        Defendant – Appellee.

───────────────

**No. 21-1387**

───────────────

THE WALL GUY, INC.; JEFFREY FRYE; JR CONTRACTORS,

        Plaintiffs – Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for The First State Bank,

        Defendant – Appellant.

───────────────

**No. 23-1380**

───────────────

THE WALL GUY, INC.; JEFFREY FRYE; JR CONTRACTORS,

Plaintiffs – Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for The First State Bank,

Defendant – Appellant.

---

Appeals from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:20–cv–00304)

---

Argued:  January 23, 2024                    Decided:  March 18, 2024

---

Before AGEE, WYNN, and THACKER, Circuit Judges.

---

Dismissed by published opinion.  Judge Wynn wrote the opinion, in which Judge Agee and Judge Thacker joined.

---

**ARGUED:**  Steven Todd Cook, COOK LAW OFFICES, PLLC, Barboursville, West Virginia, for Appellants/Cross-Appellees.  John William Guarisco, FEDERAL DEPOSIT INSURANCE CORPORATION, Arlington, Virginia, for Appellee/Cross-Appellant.  **ON BRIEF:**  B. Amon James, Assistant General Counsel, J. Scott Watson, Senior Counsel, FEDERAL DEPOSIT INSURANCE CORPORATION, Arlington, Virginia, for Appellee/Cross-Appellant.

2

WYNN, Circuit Judge:

This case originates from a lending relationship between Plaintiffs—Jeffrey Frye and his companies The Wall Guy, Inc., and JR Contractors—and First State Bank ("the Bank"). When that relationship soured, the parties sued each other. What followed was nearly a decade of litigation, including two state-court lawsuits, a jury trial, post-trial motions, removal to federal district court, and motions practice in that court.

As it comes to us on appeal, however, this case turns on the threshold question of whether Plaintiffs have properly invoked our appellate jurisdiction. Because we conclude that they have not, we dismiss the appeal for lack of jurisdiction.

## I.

We begin with the relevant factual history.

In January 2016, Plaintiffs sued the Bank in West Virginia state court for, in relevant part, breach of contract ("First Case"). A few months later, the Bank sued Plaintiffs—also in state court—alleging that they had defaulted on various loans ("Second Case"). The court in the Second Case found Plaintiffs had no equity in certain collateral and directed it be surrendered to the Bank. Plaintiffs did not seek timely reconsideration of or appeal that order, and there were no further entries on the docket in the Second Case until 2019.

Meanwhile, in August 2018, the First Case proceeded to a jury trial. The jury awarded Plaintiffs $1,500,000. Following the verdict, the parties entered into an agreement to secure the judgment ("the Pledge Agreement"), with specific real estate identified as collateral.

In March 2019, the state court granted the Bank's request for remittitur of the jury verdict. The court concluded that the jury's award must have included some inappropriate items, namely, attorneys' fees and costs and the value of the repossessed collateral in the Second Case. Accordingly, the court reduced the verdict to $524,023. The court then entered final judgment in that amount and notified Plaintiffs that they could accept the judgment, request a new trial, or appeal. Plaintiffs elected to appeal to the Supreme Court of Appeals of West Virginia.[1] The Bank filed a cross-appeal. *Wall Guy, Inc. v. FDIC.*, No. CV 3:20-0304, 2021 WL 838889, at *2 (S.D.W. Va. Mar. 5, 2021). In June 2019, the state trial court stayed any further action in the Second Case pending resolution of the appeal in the First Case. *Id.*

Before the appeal in the First Case could be resolved, however, the Bank was found to be insolvent, resulting in the Federal Deposit Insurance Corporation being appointed as receiver ("FDIC-R") on April 3, 2020. Pursuant to its authority under 12 U.S.C. § 1819(b)(2)(B), the FDIC-R removed both cases—the First and Second—to federal district court on April 30, 2020. The court consolidated both cases and then stayed them while Plaintiffs completed the mandatory administrative-claims process.

After the stay was lifted, the district court issued an order dated March 5, 2021, concluding that, under this Court's decision in *Resolution Trust Corp. v. Allen*, 16 F.3d 568 (4th Cir. 1994), upon removal, it had to adopt the state-court judgment as its own. *Wall*

---

[1] At the time, West Virginia did not have an intermediate appellate court. That has since changed: in 2021, the West Virginia Legislature created an Intermediate Court of Appeals and mandated that it was to "be established and operable on or before July 1, 2022." 2021 W. Va. Acts 875 (codified at W. Va. Code § 51-11-3(b)).

4

*Guy*, 2021 WL 838889, at *3. The court noted that, once it did so, the ordinary post-judgment remedies would be available; for example, the parties could file motions pursuant to the Federal Rules of Civil Procedure or could appeal. *Id.* Accordingly, the district court adopted the state-court remittitur award of $524,023 and gave Plaintiffs the option of either accepting the remittitur or electing a new trial. *Id.* at *3–4. Three days later, Plaintiffs filed a response accepting the remittitur. In light of that response, on March 15, 2021, the district court entered judgment in favor of Plaintiffs in the amount of $524,023 ("2021 Judgment").

On April 7, 2021, the FDIC-R timely filed a Rule 59(e) motion to amend the 2021 Judgment and a notice of appeal. Four days later, Plaintiffs also filed a Rule 59(e) motion and notice of appeal. Plaintiffs' notice of appeal stated that they thereby appealed to this Court "from Judgement Order [ECF No. 38] entered in this action on March 15th, 2021 and all orders and ruling submitted therein, including but not limited to, the Memorandum Opinion Order [ECF No. 34] entered on March 5th, 2021, and/or any rulings on pending Rule 59(e) post-judgment motions etc." J.A. 1384 (bracketed text in original).[2]

This Court consolidated the cross-appeals and suspended proceedings on appeal pending resolution of the Rule 59(e) motions. In the notice regarding suspension of the proceedings, this Court "directed [the parties] to immediately inform [the Clerk's] [O]ffice in writing of the district court's ruling on the motion [for reconsideration] and whether they intend to appeal the ruling." Jurisdictional Notice at 1, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Apr. 15, 2021), ECF No. 4. Later, this Court also remanded the case for the

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

limited purpose of allowing the district court to rule on those motions. In our remand order, we directed the parties to submit regular reports on the status of the motions.

In October 2022, the FDIC-R filed an emergency motion in the district court to enforce a provision of the Pledge Agreement requiring the parties to "negotiate" a new Pledge Agreement "without delay and in good faith" if there was a remittitur. J.A. 1344. The FDIC-R contended that, "[b]ecause Plaintiffs accepted a remittitur reducing the judgment from $1.5 million to $524,023, and in order to clear recent cloud-on-title issues on the existing collateral, the [FDIC-R] attempted to exercise its rights under" that provision, but was rebuffed. J.A. 1429. Plaintiffs opposed the FDIC-R's emergency motion and filed their own motion to enforce the Pledge Agreement, arguing that the FDIC-R had breached the "deed of trust" attached to the Pledge Agreement by selling "at least two pieces of property" secured by that agreement. Plaintiffs' Motion to Enforce the Parties' Pledge Agreement at 4, *Wall Guy, Inc. v. FDIC*, No. 3:20-cv-00304 (S.D.W. Va. Nov. 1, 2022), ECF No. 76; *see* J.A. 1346.

On November 17, 2022, the district court resolved the motions pertaining to the Pledge Agreement, granting the FDIC-R's motion and denying Plaintiffs' ("Pledge Agreement Order"). The court ordered the FDIC-R "to provide substitute collateral in the form of a letter of credit for $524,023" and Plaintiffs "to release their judgment liens on the properties listed in the Pledge Agreement" within seven days of receipt of that letter of credit. J.A. 1451.

Plaintiffs did not file a notice of appeal in response to the district court's entry of the Pledge Agreement Order. Instead, the next filing on the district court docket was

6

entered on February 7, 2023, when the district court entered an order resolving the pending Rule 59(e) motions, denying Plaintiffs' motion and granting the FDIC-R's motion in part ("Rule 59 Order").

As to the First Case, the court concluded that, while the jury's verdict was excessive, remittitur was improper because there was no way for the state court to fairly reduce the verdict without engaging in improper speculation about the jury's calculations. But the court noted that, while this scenario would normally require a new trial, no new trial was warranted because the breach-of-contract claim was statutorily unenforceable against the FDIC-R.

As to the Second Case, because the court concluded it was unclear whether the FDIC-R sought further relief in that matter, the court requested clarification from the FDIC-R. That resulted in the FDIC-R moving to dismiss the Second Case without prejudice.

The district court then entered judgment on February 15, 2023, granting final judgment in favor of the FDIC-R on the First Case while dismissing the Second Case without prejudice ("2023 Judgment") (together with the Rule 59 Order, the "2023 Orders"). Plaintiffs again did not file a notice of appeal on the district court docket.

Instead, on February 28, 2023, Plaintiffs filed a status report before this Court, noting that the district court "rendered an Order on February 15th, 2023 resolving the pending motions [for reconsideration]." Status Report at 1, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Feb. 28, 2023), ECF No. 30. They stated that "[t]he matter appears ripe for cross-appeal." *Id.* And on March 6, 2023, Plaintiffs filed the standard docketing-

7

statement form this Court requires of counseled appellants. *See* 4th Cir. R. 3(b); Docketing Statement, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Mar. 6, 2023), ECF No. 33 [hereinafter "Docketing Statement"].

On April 7, 2023, the FDIC-R filed a timely "notice of conditional cross-appeal," seeking a new trial in the event this Court "reverses or vacates in whole or in part any order or judgment that [P]laintiffs have appealed or may appeal from." J.A. 1477. We consolidated that appeal with the earlier appeals.

On January 4, 2024, a few weeks before oral argument in this case, we ordered supplemental briefing on three questions:

1. What specific authority under Federal Rules of Appellate Procedure 3 and 4 establishes the Court's subject matter jurisdiction (or lack thereof) to review the [Pledge Agreement Order]?

2. (a) What specific authority under Federal Rules of Appellate Procedure 3 and 4 establishes the Court's subject matter jurisdiction (or lack thereof) to review the [2023 Judgment]?

   (b) Are any potential references to the [2023 Judgment] in [Plaintiffs'] March 6, 2023 docketing statement, including in the "Issues" and "Nature of Case" sections, sufficient to render that docketing statement the "functional equivalent" of a notice of appeal under *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988), and its progeny, for purposes of appealing the [2023 Judgment]?

Supplemental Briefing Order at 2–3, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Jan. 4, 2024), ECF No. 61. The parties filed supplemental briefs addressing our questions.

## II.

In their Opening Brief, Plaintiffs take issue with four separate orders: the 2021 Judgment, the Pledge Agreement Order, and the 2023 Orders (the Rule 59 Order and the

2023 Judgment). But upon being faced with Plaintiffs' presentation of the issues, "[o]ur first obligation is to ascertain whether we possess jurisdiction [over] an appeal, an issue we assess *de novo*." *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 244 (4th Cir. 2023) (quoting *Dickens v. Aetna Life Ins. Co.*, 677 F.3d 228, 231 (4th Cir. 2012)). Most instructive here, "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *see* 28 U.S.C. § 2107; Fed. R. App. P. 3(a)(1).

We typically enforce Federal Rule of Appellate Procedure 3's notice-of-appeal requirement with some leniency, including for counseled parties. *E.g.*, *Jackson v. Lightsey*, 775 F.3d 170, 176 n.2 (4th Cir. 2014). That's because the Supreme Court has instructed that "courts should construe Rule 3 liberally when determining whether it has been complied with." *Smith v. Barry*, 502 U.S. 244, 248 (1992). Still, "noncompliance" remains "fatal to an appeal," even for pro se litigants. *Id.* These "twin commands from the Supreme Court—that Rule 3 is jurisdictional, but that it should be construed liberally—inherently give courts some flexibility about when to apply Rule 3's jurisdictional bar and when to use liberal construction to rescue a facially deficient notice of appeal." *Diaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 262 (1st Cir. 2013).

Further, despite any leniency or flexibility that might apply, the ultimate "burden of establishing" that we have appellate jurisdiction "rests upon the party asserting jurisdiction." *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 584 (4th Cir. 2012). And it is well stated that "[w]here an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories

to invoke our legal authority to hear her appeal." *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) (Gorsuch, J.). Thus, while in some cases we may "use liberal construction to rescue a facially deficient notice of appeal," *Diaz Aviation Corp.*, 716 F.3d at 262, in others we may choose to hold an appellant to the burden of proving "that necessary preconditions to the exercise of appellate jurisdiction—including the timely filing of a notice of appeal—have been fulfilled," *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001).

In this case, Plaintiffs have not met their burden to establish appellate jurisdiction. Despite being notified of a possible jurisdictional defect multiple times, they have not offered any valid explanation of why we can exercise jurisdiction over the 2023 Orders— even though, as explained below, that question is dispositive of our jurisdiction over all aspects of this appeal. Moreover, we decline to "rescue" Plaintiffs because even if we were to reach the merits, it appears Plaintiffs' arguments would fail. So we dismiss these appeals for lack of jurisdiction.

## A.

We start with the 2023 Orders, which are the most recent and the most important orders for this appeal. Throughout their briefing on appeal, Plaintiffs' primary argument for appellate jurisdiction over the 2023 Orders has rested on their April 2021 notice of appeal. But for the reasons we give below, that notice was insufficient to give us appellate jurisdiction over the 2023 Orders.

On April 11, 2021, Plaintiffs filed a motion to reconsider the 2021 Judgment, followed by a notice of appeal pertaining to that judgment. Under Rule 4, that meant that

10

the notice became effective upon entry of the Rule 59 Order in 2023. Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of [any motions to reconsider]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). But it became effective *only for the judgment or order it designated* (and any orders that merged into that judgment or order). Fed. R. App. P. 3(c)(1)(B), (4). The 2021 notice of appeal designated the 2021 Judgment as a judgment being appealed, so it was effective as to that judgment. But the question at hand is whether it could also effectively designate the later-filed 2023 Orders by designating for appeal, in April 2021, "any rulings on pending Rule 59(e) post-judgment motions etc." J.A. 1384. It could not.

On that point, the Federal Rules of Appellate Procedure provide clear instruction. Under Rule 4(a)(4)(B)(ii), "[a] party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), [such as a Rule 59 motion to reconsider,] or a judgment's alteration or amendment upon such a motion, *must file a notice of appeal, or an amended notice of appeal*—in compliance with Rule 3(c)—*within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion*." Fed. R. App. P. 4(a)(4)(B)(ii) (emphases added); *accord* 20 James Wm. Moore et al., Moore's Federal Practice - Civil § 303.21[3][c][vii] (2023) ("The designation in the notice of appeal of the final judgment does not usually include any orders that are entered after the judgment. An amended notice of appeal or a second notice of appeal is required to raise these later rulings."). As the Supreme Court has noted, Rule 4 "contemplate[s] that the

11

[appellant] will file the notice of appeal *after* the district court has decided the issue sought to be appealed," *Manrique v. United States*, 581 U.S. 116, 120 (2017) (discussing Rule 4(b)(1)), because it sets the deadlines as running "*after* entry of the judgment or order appealed from," Fed. R. App. P. 4(a)(1)(A), (B) (emphasis added).

The Rules do allow for an earlier-filed notice of appeal to encompass a later-filed entry of the order in particular circumstances. Notably, "[a] notice of appeal filed *after the court announces a decision or order*—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2) (emphasis added); *accord* Fed. R. App. P. 4(b)(2) (same in the criminal context). "By its own terms," however, this Rule "applies only to a notice of appeal filed after a [decision] has been 'announce[d]' and before the judgment . . . is entered on the docket." *Manrique*, 581 U.S. at 123 (second alteration in original) (discussing Rule 4(b)(2)). And at the time Plaintiffs filed the April 2021 notice of appeal, the district court had not yet announced its decision related to the Rule 59 motions. So, the April 2021 notice of appeal could not provide the basis for an appeal from the 2023 Orders.

As one leading treatise puts it, "[g]iven that Rule 4(a)(2) refers to '[a] notice of appeal filed after the court announces a decision or order,' it is unsurprising that courts find that the Rule does not afford relation forward for a notice of appeal that is filed *before* the court announces the decision that the would-be appellant later seeks to challenge." 16A Charles Alan Wright et al., Federal Practice and Procedure § 3950.5 (5th ed. 2019 & Supp. 2023) (alteration in original); *e.g.*, *Marshall v. Comm'r Pa. Dep't of Corr.*, 840 F.3d 92, 95 (3d Cir. 2016) ("Rule 4(a)(2) does not apply here because Marshall filed his notice of

appeal before the District Court announced its decision."); *United States v. Hansen*, 795 F.2d 35, 37 (7th Cir. 1986) ("A notice of appeal filed (as in this case) before the announcement of judgment does not satisfy the condition in Rule 4(a)(2) for postponing the notice's effective date."). This rule makes good sense: before a decision is made, neither party knows whether that decision will be favorable or adverse to their interests.

Circuits confronted with similar situations, where a notice of appeal referred to a *pending or imminent* motion for which no decision had yet been announced, have agreed with our conclusion that such a notice is insufficient to confer appellate jurisdiction.[3] In the Third Circuit case *Carrascosa v. McGuire*, the district court entered a final order, after which the appellant filed a motion for reconsideration and then a timely notice of appeal. *Carrascosa v. McGuire*, 520 F.3d 249, 251 (3d Cir. 2008). The notice stated that the appellant was appealing the final order and that, because of the pending motion for reconsideration, she would "withdraw [the] Notice of Appeal, or file an amended notice of appeal, as may become necessary." *Id.* More than five months after the district court denied the motion for reconsideration, the appellant filed an amended notice of appeal. *Id.* at 252. The appellant conceded that this amended notice was untimely. *Id.* But she contended that

---

[3] *Moore's Federal Practice* notes an exception not at issue here: that "[a] circuit court may hear the appeal from a postjudgment order if it finds that the postjudgment order is inextricably entwined with issues that have been properly raised in the notice of appeal." Moore et al., *supra*, § 303.21[3][c][vii]. "For example, an order fixing costs entered in the district court during the pendency of an appeal has been found to be an inseparable part of that pending appeal and was therefore available for review in the circuit court, even though the notice of appeal had not (indeed could not have) mentioned the order." *Id.* Because the issue is not before us, we do not evaluate whether such an exception applies, or should apply, in this Circuit.

the *original* notice was sufficient to appeal not only the final order, but also the later denial of reconsideration, because it "'specifically referenced the pending reconsideration motion,' thereby signaling her intention 'to seek an appeal of the denial of the Motion for Reconsideration.'" *Id.*

The Third Circuit rejected the appellant's argument. It held that, under the Rules, the appellant's original notice of appeal "became effective on . . . the date that the District Court entered its order denying her Motion for Reconsideration." *Id.* at 253. But if the appellant "wanted her appeal 'to encompass any challenge to' the District Court's denial of *that* motion, she was required to file a new or amended notice of appeal within the . . . time limit imposed by the Federal Rules." *Id.* (emphasis added) (quoting *United States v. McGlory*, 202 F.3d 664, 668 (3d Cir. 2000) (en banc)); *accord United States v. Brown*, No. 21-5045, 2021 WL 3027858, at *2 (6th Cir. June 2, 2021) (per curiam) (concluding that the court lacked jurisdiction over an appeal of the district court's denial of a motion for reconsideration where the notice of appeal was filed at the same time as the motion, noting that "[a] notice of appeal filed before a ruling is made is premature").

Similarly, in *Bogle v. Orange County Board of County Commissioners*, the Eleventh Circuit considered a situation where the district court entered judgment as a matter of law against the plaintiff on April 7, 1997. *Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs*, 162 F.3d 653, 656 (11th Cir. 1998). Shortly thereafter, the defendant filed notice of its intent to seek Rule 11 sanctions, and the plaintiff subsequently filed a timely notice of appeal. *Id.* The notice of appeal stated that the plaintiff was appealing "all Orders of th[e district] Court, including the Final Judgment rendered on April 7, 1997." *Id.* at 660.

14

Then, a few days after the plaintiff filed his notice of appeal, the defendant filed its Rule 11 motion, which the district court ultimately granted. *Id.* at 656. On appeal, the plaintiff sought to challenge not only the entry of judgment as a matter of law, but also the imposition of sanctions. *Id.*

The Eleventh Circuit concluded that the earlier-filed notice of appeal was insufficient to confer appellate jurisdiction over the imposition of sanctions. *Id.* at 661. It held that the fact "[t]hat an order imposing sanctions may have been contemplated" at the time the plaintiff noticed his appeal did not "change the fact that," at that time, "a decision regarding sanctions had not yet been announced and sanctions had not yet been imposed." *Id.* The court further noted that, "[a]lthough notices of appeal are to be given expansive rather than hypertechnical construction, Rule 3(c) requires that a notice of appeal designate an existent judgment or order, not one that is merely expected or that is, or should be, within the appellant's contemplation when the notice of appeal is filed." *Id.*

We agree with these other circuits: a notice of appeal filed *before* the district court has even announced a decision on a future or pending motion cannot confer appellate jurisdiction over an appeal from a later order related to that motion. The April 2021 notice of appeal therefore cannot create appellate jurisdiction over the February 2023 Rule 59 Order or 2023 Judgment.

Instead, for Plaintiffs to appeal the 2023 Orders, they needed to "file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by [Rule 4] measured from the entry of the" Rule 59 Order. Fed. R. App. P. 4(a)(4)(B)(ii); *see Hatton v. Thomasville Furniture Indus., Inc.*, 2 F. App'x 302, 304 n.2

15

(4th Cir. 2001) (per curiam) ("Because [the appellant] did not amend his notice of appeal after the district court's denial of his motion for reconsideration, the issues raised in his motion for reconsideration are not before the Court." (citing *McGlory*, 202 F.3d at 668)); *Carrascosa*, 520 F.3d at 253 (same); *Bracey v. Lancaster Foods LLC*, 838 F. App'x 745, 748 (4th Cir. 2020) (unpublished but orally argued) (concluding that the new-or-amended-notice requirement is jurisdictional). This they did not do.

## B.

In many cases, the appellant's failure to file a formal notice of appeal from a particular judgment would nevertheless not end the inquiry because another, timely filed document would be able to serve as the functional equivalent of that notice. Here, however, we cannot discern from the briefs that such a document exists, and under the circumstances of this case, we decline to independently seek out justifications for exercising jurisdiction.

Under Rule 3(a)(1), "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4." Fed. R. App. P. 3(a)(1). And under Rule 3(c)(1), "[t]he notice of appeal must: (A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice . . . ; (B) designate the judgment—or the appealable order—from which the appeal is taken; and (C) name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1). The Supreme Court has held that these are jurisdictional

16

requirements.[4] *Torres*, 487 U.S. at 317; *cf. Gonzalez v. Thaler*, 565 U.S. 134, 147–48 (2012).

That said, "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal." Fed. R. App. P. 3(c)(7). Instead, the operative question is whether a document filed within the time prescribed for a notice to appeal "was the 'functional equivalent' of the formal notice of appeal demanded by Rule 3." *Smith*, 502 U.S. at 248.

---

[4] Other circuits have recently evaluated whether the requirements of Rule 3(c) should still be considered jurisdictional. The Eighth and Eleventh Circuits have "acknowledge[d] that recent decisions of the Supreme Court call into question its earlier decisions that the content requirements for notices of appeal are jurisdictional," but have concluded that they are nevertheless "bound to follow" the Supreme Court's earlier "precedents on this issue until the Supreme Court overrules them." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 722–23 (11th Cir. 2020) (citations omitted); *see Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 (8th Cir. 2021) (same). Additional circuit courts have nearly uniformly continued to treat compliance with Rule 3(c) as jurisdictional without addressing more recent Supreme Court decisions. *E.g.*, *O'Brien v. Town of Bellingham*, 943 F.3d 514, 526 (1st Cir. 2019); *Cho v. Blackberry Ltd.*, 991 F.3d 155, 162–63 (2d Cir. 2021); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 67–68 (3d Cir. 2017); *Hauck-Adamson v. Communist Party of Ky.*, No. 20-5758, 2020 WL 5914615, at *1 (6th Cir. Aug. 5, 2020) (per curiam); *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1023 (9th Cir. 2021); *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1199 n.8 (10th Cir. 2017); *Artrip v. Ball Corp.*, 735 F. App'x 708, 712 (Fed. Cir. 2018); *cf. United States v. Bonk*, 967 F.3d 643, 648 & n.28 (7th Cir. 2020) (appearing to conclude that the requirements of Rule 3(c) are still jurisdictional, even considering more recent Supreme Court case law). *But see Wiener, Weiss & Madison v. Fox*, 971 F.3d 511, 514 & n.5 (5th Cir. 2020) (appearing to treat Rule 3(c)'s requirements as mandatory, not jurisdictional).

But we do not resolve this question at this time because Plaintiffs have not argued that the content requirements of Rule 3 are nonjurisdictional. In any event, at minimum, "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles*, 551 U.S. at 214. And, as we conclude, Plaintiffs have not satisfied the initial step of pointing to a timely notice of appeal.

17

That is, "[i]f a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." *Id.* at 248–49.

So, for example, in *Smith v. Barry*, the Supreme Court concluded that a pro se appellant's informal opening brief could constitute the functional equivalent of a notice of appeal, conferring appellate jurisdiction over the case. *Id.* at 250. The fact that the brief had been filed in the Court of Appeals—not the district court, as a formal notice of appeal would be—was of no moment because the Rules "set[] out a transmittal procedure to be followed when the notice of appeal is mistakenly filed with an appellate court, and provides that a misfiled notice 'shall be deemed filed in the district court' on the day it was received by the court of appeals." *Id.* at 249 (quoting Fed. R. App. P. 4(a)(1) (1992)); *accord* Fed. R. App. P. 4(d) (current equivalent version of this Rule).

Following *Smith*, we have allowed a number of different types of documents, filed in either our Court or the district court, to serve as the functional equivalent of a notice of appeal.[5] We have emphasized, however, that "[i]n order for us to find that a [document] is the functional equivalent of a notice of appeal, the [document] *must* be timely under Rule

---

[5] *E.g.*, *Clark v. Cartledge*, 829 F.3d 303, 304 (4th Cir. 2016) (pro se request for extension of time to seek a certificate of appealability); *United States v. Coleman*, 319 F. App'x 228, 229 n.1 (4th Cir. 2009) (per curiam) (docketing statement); *Mitchell v. Virginia*, No. 23-6077, 2023 WL 2583688, at *1 (4th Cir. Mar. 21, 2023) (per curiam) (pro se informal brief); *United States v. Nelson*, 859 F. App'x 675, 675 n.* (4th Cir. 2021) (per curiam) (pro se supplemental brief); *United States v. Goforth*, 245 F. App'x 260, 261 (4th Cir. 2007) (per curiam) (request for reconsideration and certificate of appealability filed in district court); *United States v. Hatala*, 191 F.3d 449, 1999 WL 734737, at *1 n.* (4th Cir. 1999) (unpublished, per curiam table decision) (request for certificate of appealability filed in district court); *cf. United States v. Hill*, 706 F. App'x 120, 121 (4th Cir. 2017) (per curiam) (suggesting that a "motion to amend [the] notice of appeal" might have been able to serve as the functional equivalent of a notice of appeal had it been timely).

18

4 and *must* satisfy the notice requirements of Rule 3." *Clark v. Cartledge*, 829 F.3d 303, 307–08 (4th Cir. 2016). To be "timely under Rule 4" here, *id.*, the document in question needed to be filed within "60 days after entry of the judgment or order appealed from,"[6] Fed. R. App. P. 4(a)(1)(B). And to "satisfy the notice requirements of Rule 3," *Clark*, 829 F.3d at 308, the document also needed to "specify the party or parties taking the appeal," "designate the judgment—or the appealable order—from which the appeal is taken," and "name the court to which the appeal is taken," Fed. R. App. P. 3(c)(1).

In the case at bar, the only document filed within the appropriate timeframe that could potentially serve as the functional equivalent of a notice of appeal from the 2023 Orders is the docketing statement that Plaintiffs filed in this Court on March 6, 2023.[7] The docketing statement specified the parties taking the appeal and named this Court as the court to which the appeal was taken. Fed. R. App. P. 3(c)(1)(A), (C); *see* Docketing Statement at 1, 4. So the dispositive question is whether the docketing statement

---

[6] The sixty-day deadline applies when, as here, "one of the parties is . . . a United States agency." Fed. R. App. P. 4(a)(1)(B)(ii); *see Waldron v. FDIC*, 935 F.3d 844, 847 (9th Cir. 2019) (collecting cases concluding that the FDIC is a United States agency, even "when acting solely as a receiver"); 12 U.S.C. § 1819(b)(1) ("The [FDIC], in any capacity, shall be an agency of the United States for purposes of [28 U.S.C. § 1345] without regard to whether the [FDIC] commenced the action.").

[7] We acknowledge that, in a prior case, we allowed an opening brief to demonstrate the intent to appeal a particular order without evaluating whether that brief was timely as a notice of appeal. *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005). However, the Supreme Court has since clarified that "the *timely* filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles*, 551 U.S. at 214 (emphasis added). Consistent with that admonition, we have emphasized that for a document to serve as "the functional equivalent of a notice of appeal," it "*must* be timely under Rule 4." *Clark*, 829 F.3d at 307–08. Here, Plaintiffs' Opening Brief was not filed within sixty days of the 2023 Orders, so it cannot serve as the functional equivalent of the notice of appeal.

19

sufficiently "designate[d]" the 2023 Orders as being ones "from which the appeal [was] taken." Fed. R. App. P. 3(c)(1)(B).

The problem for Plaintiffs is that the docketing statement provided mixed signals as to whether Plaintiffs intended to appeal the 2023 Orders. And yet, when repeatedly, directly prompted to clarify whether their docketing statement could be read to designate the 2023 Orders, Plaintiffs did not provide a valid explanation. *Cf. Becker v. Montgomery*, 532 U.S. 757, 767 (2001) ("[I]mperfections in noticing an appeal should not be fatal *where no genuine doubt exists* about who is appealing, from what judgment, to which appellate court." (emphasis added)).

We begin with the mixed signals. In the docketing statement's "Jurisdiction" section, under "Date of entry of order or judgment appealed," Plaintiffs indicated "March 8th, 2021"—not the date of either of the 2023 Orders.[8] Docketing Statement at 1. The "Jurisdiction" section's only reference to the 2023 Orders was in the box for "Date order entered disposing of any post-judgment motion." *Id.* We have held in unpublished authority that such a reference, alone, is insufficient to confer appellate jurisdiction over a post-judgment order. *Bracey*, 838 F. App'x at 748. After all, merely noting that a post-judgment order was *filed* is not enough to indicate that the order is *the subject of the appeal*. To the contrary, the fact that when the docketing statement specifically required them to state the date the appealed order or judgment was entered, Plaintiffs *did not* refer to the 2023 Orders,

---

[8] In fact, there was no order entered on March 8th, 2021. We assume this "was simply a 'scrivener's error'" and that Plaintiffs intended to refer to the 2021 Judgment, which was filed on March 15, 2021. *Bogart*, 396 F.3d at 554 n.4.

suggests that those orders were *not* the subject of the appeal.[9] *Cf. Jackson*, 775 F.3d at 176

(concluding that, where the notice of appeal "express[ly] designat[ed] . . . one particular

order" and made no reference to another order, "the fairest inference is that [the appellant]

did not intend to appeal the other" order).

The docketing statement also included a "Nature of Case" section, which directed

Plaintiffs to explain the "[n]ature of [the] case and [the] disposition below." Docketing

Statement at 2. In that section, Plaintiffs described the 2023 Orders. *Id.* at 6. But that

description does not obviously designate those orders as being the matters appealed

because it is perhaps most naturally read as merely providing a description of the

proceedings below, without necessarily designating all those proceedings as the subject of

the appeal.

By contrast, later in the docketing statement, Plaintiffs were asked to list the

"Issues," that is, to provide a "[n]on-binding statement of issues on appeal." Docketing

Statement at 3. Among other issues, Plaintiffs stated that the district court "erred by

---

[9] We note that 2021 amendments to Rule 3 clarified that, in some circumstances, courts should not interpret silence in a notice of appeal to deprive them of jurisdiction. *See* Fed. R. App. P. 3(c)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal."); Fed. R. App. P. 3(c)(6) ("An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited. Without such an express statement, specific designations do not limit the scope of the notice of appeal."); Fed. R. App. P. 3(c) advisory committee's note to 2021 amendment (describing these amendments). Those provisions do not apply to our review of whether the 2023 Orders were properly designated in the docketing statement. The 2023 Orders cannot have "merged into" the earlier (designated) 2021 Judgment, and there is no suggestion that Plaintiffs designated "only part" of any single order.

entering a final order which found judgment in favor of FDIC, essentially granting a JNOV, and reducing Plaintiff[s'] award to zero and or a negative amount." *Id.* That would seem to suggest that Plaintiffs *did* intend to appeal the 2023 Orders, which are the only orders that could be described in that way. *See United States v. Garcia*, 65 F.3d 17, 19 (4th Cir. 1995) (noting that, although "orders can be and commonly are identified by their dates of entry, nothing in Rule 3(c) requires an appellant to 'designate' an order by date"). This apparent conflict between the Jurisdiction and Issues sections of the docketing statement creates at least some genuine doubt about the basis for their appeal.

It is possible that Plaintiffs' single reference in the "Issues" section of the docketing statement—or that reference in combination with the description in the "Nature of Case" section—could be enough to designate the 2023 Orders as the orders appealed, particularly given the "liberal[] constru[ction]" we afford to "pleadings under Rule 3." *Id.* But we decline to reach that novel question because Plaintiffs have insufficiently made such an argument in support of jurisdiction in this case. While we will liberally construe *the contents* of a filing that might serve as a notice of appeal, nothing obligates us to liberally construe the *briefs* of a counseled party who makes only conclusory arguments about why a given filing satisfies the requirements of Rule 3.

In their Opening Brief, Plaintiffs rested their assertion of jurisdiction entirely on the April 2021 notice of appeal—an argument that fails for the reasons explained above. It was the FDIC-R who first noted (and disputed) the docketing statement as a possible source of appellate jurisdiction, when it raised the jurisdictional matter in its Opening-Response Brief and pointed out that a new or amended notice of appeal was required by Rule

22

4(a)(4)(B)(ii). Yet, in response, Plaintiffs' only reference to the docketing statement was to state summarily that "[a]ll the matters are set forth in the docketing statement filed on 6 March, 2023, so the FDIC had notice." Plaintiffs' Response-Reply Br. at 5–6.

In light of the ambiguous nature of the docketing statement explained above, we ordered supplemental briefing on the jurisdictional question. In addition to asking generally "[w]hat specific authority under Federal Rules of Appellate Procedure 3 and 4 establishes the Court's subject matter jurisdiction (or lack thereof) to review the [2023 Judgment]," we queried whether "any potential references to the [2023 Judgment] in [Plaintiffs'] March 6, 2023 docketing statement, including in the 'Issues' and 'Nature of Case' sections," were "sufficient to render that docketing statement the 'functional equivalent' of a notice of appeal." Supplemental Briefing Order at 2–3, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Jan. 4, 2024), ECF No. 61. But in their supplemental brief and at oral argument, Plaintiffs never explained *how* the statements in the "Issues" and "Nature of Case" sections were sufficient to provide the notice Rule 3 requires.

Additionally, in their supplemental brief, Plaintiffs argued that the *combination* of the docketing statement with other previous filings made clear their intent to appeal. The Eighth Circuit appears to have embraced such a theory. *See Hawkins v. City of Farmington*, 189 F.3d 695, 704 (8th Cir. 1999). But, even assuming we would adopt the Eighth Circuit's reasoning, a consideration of the various filings here does not dispel the ambiguity inherent in the docketing statement alone.

To review, Plaintiffs filed a notice of appeal in April 2021, designating (appropriately) the 2021 Judgment and (inappropriately) any judgment from the pending

23

motions for reconsideration. They thus signaled, albeit ineffectively, that they intended to appeal what they apparently assumed would be an adverse decision on the motions for reconsideration. Yet, as discussed, Rule 4(a)(4)(B)(ii) explicitly required them to file a new or amended notice of appeal once the 2023 Orders issued.

Consistent with that Rule, this Court issued a jurisdictional notice in April 2021 directing the parties to immediately inform our Clerk's Office "in writing of the district court's ruling on the motion [for reconsideration] *and whether they intend to appeal the ruling*." Jurisdictional Notice at 1, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Apr. 15, 2021), ECF No. 4 (emphasis added). Despite the plain language of the Rule, and despite the jurisdictional notice we provided, Plaintiffs did not file a new or amended notice of appeal, suggesting they did *not* intend to appeal the 2023 Orders after all.

Instead, Plaintiffs filed a status report in February 2023 that stated, without further elaboration, that "[t]he matter appears ripe for cross-appeal." Status Report at 1, *Wall Guy, Inc. v. FDIC*, No. 21-1414 (4th Cir. Feb. 28, 2023), ECF No. 30. Shortly thereafter, they filed the docketing statement, which is ambiguous for the reasons described above. In sum, while the April 2021 notice of appeal suggested Plaintiffs *would* appeal from an adverse ruling on the motions for reconsideration, their *actual behavior* after that ruling was ambiguous.

Accordingly, neither in the original round of briefing nor in the supplemental briefs did Plaintiffs raise a clear argument for why we may exercise appellate jurisdiction over

24

the 2023 Orders. And we are not obligated to make such an argument on their behalf.[10]
*E.g.*, *Raley*, 642 F.3d at 1275; *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 202 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023).

Nevertheless, in another case, issues of justice might compel us to exercise our discretion to evaluate the jurisdictional question of our own accord. *See Manning v. Caldwell*, 930 F.3d 264, 271 (4th Cir. 2019) (en banc) (collecting cases regarding our discretion to reach issues not presented by the parties); *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("The party presentation principle is supple, not ironclad. There are no doubt circumstances in which a modest initiating role for a court is appropriate."). If, for example, the case for vacatur or reversal was particularly compelling, we might have concluded that we should evaluate the docketing statement's validity as a notice of appeal regardless of the arguments Plaintiffs did or did not make in support of jurisdiction. And perhaps, in such a case, we would have concluded that the docketing statement *could* serve as a notice of appeal from the 2023 Orders.[11]

---

[10] We would, of course, be required to sua sponte consider arguments that we lacked jurisdiction before we could *assert* it. *Gonzalez*, 565 U.S. at 141.

[11] Indeed, in similar circumstances, other circuits have found a docketing statement's description of an order sufficient to confer jurisdiction, albeit often where there was some extra factor that made the designation particularly clear. *E.g.*, *Denver & Rio Grande W.R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) (holding that a docketing statement was sufficient to confer appellate jurisdiction where "it failed to designate the dates of the orders" appealed but "clearly described the issues on appeal as those decided by the undesignated orders" *and attached copies of those orders to the docketing statement*); *Trotter v. Regents of the Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000) (same); *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 n.9 (10th Cir. 2010) (finding docketing statement sufficient to serve as notice of appeal where it "unambiguously stated" the party's "intent to challenge" the order in question); *Partners*

25

But here, the case for vacatur or reversal is not particularly compelling. Of course, we do not resolve the issues at hand in this appeal, because we lack jurisdiction to do so. But in the process of reviewing the briefs and hearing oral argument, we have been faced with Plaintiffs' arguments on the merits related to the 2023 Orders, and our preliminary review suggests that an appeal of those Orders would not be fruitful. Put differently, we are not convinced that this is a case where "the equities require" us to sua sponte put forth reasoning in favor of our jurisdiction. *Curry v. Beatrice Pocahontas Coal Co.*, 67 F.3d 517, 522 n.8 (4th Cir. 1995).

For these reasons, we dismiss Plaintiffs' appeal as to the 2023 Orders for lack of jurisdiction.

C.

Our decision to dismiss the appeal of the 2023 Orders requires us to also dismiss Plaintiffs' appeal of the 2021 Judgment and Pledge Agreement Order, as well as the FDIC-R's cross-appeal of the 2023 Orders, for lack of jurisdiction.

First, Plaintiffs' appeal of the 2021 Judgment and the FDIC-R's cross-appeal of the 2023 Orders were timely. However, the 2021 Judgment has been replaced by the 2023 Orders, and the FDIC-R only conditionally cross-appealed those Orders in the event we reversed or vacated them. Accordingly, these two appeals are moot. *See Int'l Bhd. of Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 235 (4th Cir. 2018) ("If an

---

*& Friends Holding Corp. v. Cottonwood Mins., L.L.C.*, No. 23-10192, 2023 WL 8649880, at *2 (5th Cir. Dec. 14, 2023) (per curiam) (similar).

event occurs during the pendency of an appeal that makes it impossible for a court to grant effective relief to a prevailing party, then the appeal must be dismissed as moot.").

Second, Plaintiffs have not pointed to a timely notice of appeal from the Pledge Agreement Order. The only filings Plaintiffs made within sixty days of that order were status reports filed in this Court on December 1 and 30, 2022, neither of which were even arguably the functional equivalent of a notice of appeal. Instead, Plaintiffs contend that the Pledge Agreement Order merged with the 2023 Orders pursuant to Rule 3(c)(4), such that their purported appeal of the 2023 Orders encompassed the Pledge Agreement Order. *See* Fed. R. App. P. 3(c)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order."). Since the 2021 amendment to Rule 3 that added the relevant language, there has been little case law interpreting which orders "merge into" a later order, and we are aware of none evaluating whether a potentially collateral order like the Pledge Agreement Order would "merge" with the final judgment. We need not resolve that issue, however, because, even if the Pledge Agreement Order merged into the 2023 Orders, Plaintiffs have not established a timely notice of appeal regarding *those* orders for the reasons described above.

## III.

The Federal Rules of Appellate Procedure are not meant to create a byzantine system that only the cleverest litigants can navigate. To the contrary, "the requirements of the rules of procedure should be liberally construed and . . . 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Torres*, 487 U.S. at 316

27

(quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)). But neither may the Rules be ignored, particularly where, as here, they implicate our appellate jurisdiction over the case.

Nor may appellants rely on us to make jurisdictional arguments for them. In some cases, we may find it appropriate to "rescue" an appellant so as to avoid a circumstance where "a slip of the pen," the appellant's pro se status, or a similar factor results in a notice of appeal that is deficient only in a technical sense, or where we are faced with compelling merits arguments that support such a "rescue" for reasons of justice. *Blockel v. J.C. Penney Co.*, 337 F.3d 17, 24 (1st Cir. 2003) (quoting *Town of Norwood v. New Eng. Power Co.*, 202 F.3d 408 (1st Cir. 2000)); *e.g.*, *Clark*, 829 F.3d at 306 (pro se appellant); *Torres v. Bella Vista Hosp., Inc.*, 914 F.3d 15, 19 (1st Cir. 2019) (opting to "exercise [the court's] discretion to review [a particular] ruling notwithstanding the lack of clarity in the notice of appeal"). But we are not obligated to do so. *See Raley*, 642 F.3d at 1275.

We decline to make arguments favoring jurisdiction on Plaintiffs' behalf under the circumstances of this case. Accordingly, we dismiss the cross-appeals for lack of jurisdiction.

*DISMISSED*